UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DISTRICT
5:11-CR-00292-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S PRO SE MOTION |
| VINCENT LIPSCOMB, | ) | FOR COMPASSIONATE RELEASE |
| | ) | |
| Defendant. | ) | |

Mr. Vincent Lipscomb, through undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to death or serious complications from COVID-19 while suffering from obesity, prediabetes, and hypertension. ***See Exhibit A: Partial Medical Records (2020)***. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Lipscomb has properly exhausted his administrative remedies by filing his release request with his Federal Correctional Institution in Bennettsville, South Carolina on November 23, 2020, to which he has received no response. ***See Exhibit B: Administrative Remedy Request.***

Mr. Lipscomb is fifty-six (56) years old and suffers from obesity, prediabetes, and hypertension. *See* **Exhibit A**: Partial Medical Records at 12, 21 (2020). Adults of any age with obesity are at increased risk of severe illness from COVID-19. *See* CDC Guidance:https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

1

precautions/people-with-medical-conditions.html (last accessed Feb. 19, 2021) ("Severe illness from COVID-19 is defined as hospitalization, admission to the ICE, intubation or mechanical ventilation, or death."). While detained and unable to comply with reasonable social distancing and hygienic COVID-19 precautions recommended by the CDC, Mr. Lipscomb risks the most hazardous COVID-19 complications or death with his combination of prediabetes, obesity, and hypertension. *See* **Exhibit A**.

Mr. Lipscomb is in custody at FCI Bennettsville where the detained population is around 1300 total inmates, according to the Federal Bureau of Prisons. Staff members and inmates have already been infected with COVID-19 at FCI Bennettsville. Importantly, Mr. Lipscomb is detained in the satellite camp of FCI Bennettsville, where roughly 80 inmates share a single dorm. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time. ***See also Exhibit C: Motion for Reduction in Sentence.***) In such an environment Mr. Lipscomb is highly likely to contract COVID-19. This type of punishment which consists of him having to be detained during these times does not fit the crime anymore; in other words, it is certainly greater than necessary. 18 USC § 3553(a).

According to a National Commission on COVID-19 and Criminal Justice report released September 2020 on the impact of COVID-19 in U.S. State and Federal Prisons, the COVID-19 mortality rate within prisons is twice as high as the general population's morality rate and the rate of COVID-19 infections is over four times as

high as the general population. *See Schnepel, Kevin T.* COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice (September 2020). New outbreaks of COVID-19 have increased rapidly in recent months, which is particularly concerning when the United States has the largest incarcerated population in the world at about two million detainees. The mortality rate for Black Americans with COVID-19 is twice that of white Americans and Black Americans are incarcerated five times more often than white Americans. *See Schnepel, Kevin T.* COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice (September 2020). A key finding from the report was that the highest COVID-19 mortality rates were observed "within large prisons…" *Id.* Mr. Lipscomb is African American with obesity, prediabetes, hypertension, and detained at FCI Bennettsville, which is a large prison already having to provide extensive medical care to inmates with COVID-19. Therefore, considering all factors in this case, he is at a very high risk of COVID-19 complications or mortality, presenting extraordinary and compelling reasons for compassionate release.

As most judges from the Eastern District of North Carolina have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Lipscomb's sentence to time served and/or home confinement given. Importantly, our Courts have ruled this is appropriate in a case very similar to Mr. Lipscomb's. *See United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-

3

149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020) (noting Mr. Gutierrez's medical issues including diabetes and obesity as grounds for compassionate release.)

## STATEMENT OF FACTS

On October 5, 2011, Vincent Lipscomb was named in a two-count indictment filed in the Eastern District of North Carolina in front of Magistrate Judge James E. Gates. *See [D.E. 8]*. Both counts charged Mr. Lipscomb with distribution of a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1). *See PSR Lipscomb at 32*. On February 14, 2012, Mr. Lipscomb pled guilty to both counts. [D.E. 25]. On September 4, 2012, a judgment was entered against Mr. Lipscomb, sentencing him to 151 months imprisonment and three years of supervised release. [D.E. 36]. Mr. Lipscomb' projected release date is August 4, 2021. https://www.bop.gov/inmateloc/.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

4

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Case 5:11-cr-00292-FL   Document 76   Filed 03/12/21   Page 5 of 19

Mr. Lipscomb is unfortunately extremely vulnerable to hospitalization wherein his life as he knows it can very easily be detrimentally impacted forever or even worse, he could potentially look at death if he contracts COVID-19. *See* Current CDC Determinations of High Risk Conditions: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 19, 2021). Due to the combination of risk factors, proven through statistics and medical reports, Mr. Lipscomb' request for compassionate release qualifies under the guidelines as 'extraordinary and compelling' reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when the defendant is—

(I)     suffering from a serious physical or medical condition;
(II)    suffering from a serious functional or cognitive impairment; or
(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Lipscomb's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement

6

governing compassionate release that in many ways narrowed the criteria established by the Commission. *See BOP Program Statement 5050.49*. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*,

allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Mr. Lipscomb' underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Lipscomb posed by COVID-19 warrants relief.

**A. This Honorable Court has the authority to determine that Mr. Lipscomb's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. *United States v.*

8

*Brooker (Zullo)*, No. 19-3218, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). Courts have used their wise and appropriate discretion to provide defendants with relief under §3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3. As discussed herein, the case sub judice presents similar factors with respect to Mr. Lipscomb who is currently being incarcerated at FCI Bennettsville wherein he is housed at an unsafe dormitory, and he is currently at

high risk given his medical ailments. Consequently, much like Mel, Mr. Lipscomb presents a series of factors which 'collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." ' *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary support, strength and love that only family can provide, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments,"

including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This frightening pandemic, as applied to Mr. Lipscomb with his current

11

chronic illnesses and high risk for death once contracting COVID-19, is an extraordinary and compelling circumstance.

## B. Mr. Lipscomb' Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19." CDC, *People with Certain Medical Conditions.* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 19, 2021) (listing Type 2 diabetes mellitus obesity, and hypertension as medical conditions putting adults of any age at increased risk of severe illness from COVID-19).

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate. What is even more disturbing is how this pandemic has impacted those in our community who are African American at such a higher rate than others. Accordingly, when taking into consideration that Mr. Lipscomb is both in prison and is African American he is at even a higher risk of facing such severe medical consequences. Given that he only has a few months left it would simply ensure that these next few months are not exceptionally detrimental to him and as a consequence creating a clearly unjust sentence. Thus, it is abundantly clear that Mr. Lipscomb

has served a more than sufficient punishment and as such warrants compassionate release.

Amid this rapidly-unfolding crisis, the recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[1] Mr. Lipscomb is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Lipscomb's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Lipscomb' compromised physical health, and the unique risk factor of living

---

[1] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the former President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.* The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf.*

in a shared dormitory during COVID-19, when combined with the other Section 3553(a) sentencing factors, necessitate immediate relief.

The court shall impose a sentence that is sufficient but "not greater than necessary" to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D). "[A]lthough defendant's federal sentence may have been appropriate at the time it was imposed, the Court's analysis is different in current circumstances. *United States v. Lee*, 2020 WL 3422772, at *5 (E.D. Va. June 22, 2020). *United States v. Mel*, 2020 WL 2041674 at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

Any further detention of Mr. Lipscomb during this time would be to continue a sentence that is greater than necessary, particularly when "prisons now are even more dangerous than we typically accept." *United States v. Brown,* No. 4:05-CR-00227-1, 2020 WL 2091802, at *2 (S.D. Iowa Apr. 29, 2020). Mr. Lipscomb has served over eighty percent of his sentence which reflects the seriousness of the offense, but which takes into account that his offenses were non-violent and related to struggles with drug and alcohol abuse.

14

Further deterring any future criminal conduct, Mr. Lipscomb has a clear release plan. Firstly, he has a place to live. He will be residing with his mother, Ms. Newberry, at 2508 Fire Light Road, Raleigh, NC 27601. ***See Exhibit D: Character Letters***. Secondly, Mr. Lipscomb has a job lined up upon release with On Point Trucking. He even properly includes the number of his pending boss Mr. Vernell in his letter to Chief Judge Boyle. ***See Exhibit D***. His sister-in-law likewise vouches for his pending employment with Mr. Vernell. ***See Exhibit D***.

Mr. Lipscomb needs to be released to care for his mother, as she recently suffered the loss of Mr. Dusty Lewis, her husband of 54 years, to COVID-19. Mr. Lewis was Lipscomb's step-father, but raised Mr. Lipscomb as his own son. Mr. Lipscomb needs to be able to provide his mother emotional and financial support during this difficult time. Moreover, Ms. Newberry needs her son's help with her deteriorating health. In recent months, Ms. Newberry has been suffering various after-effects of having herself contracted COVID-19. ***See Exhibit D: letters to judge from Paula Lipscomb and Tonya Lipscomb***. She needs her son to help her get to and from her numerous hospital visits, and to help manage mounting bills and housework now that her husband is gone.

Since he has been detained, Mr. Lipscomb has worked incessantly towards his rehabilitation. ***See Exhibit E: Enrolled Programs***. He has completed his GED, taken classes to build his employment skills and financial literacy, classes for drug abuse treatment, classes for effective communication, classes to build a business plan, classes for becoming a better parent, and other classes which are directly relevant to

rehabilitation. Mr. Lipscomb' offense was primarily motivated by his struggles with alcohol and drug abuse, but having completed a substance abuse management class, along with the other classes listed, Mr. Lipscomb is clearly able to and desires to ensure that he continues on this positive path of growth. As Mr. Lipscomb puts it in his letter to Judge Boyle: "I have had time to reflect on the life I have been living and the times that I have missed, this pandemic [has] really hit home for me and I write this letter to you as a changed man…" Importantly, Mr. Lipscomb has already showed his changed behavior during his incarceration; he has not had a single disciplinary write-up during his almost ten years at FCI Bennettsville.

To provide Mr. Lipscomb most effectively with medical care, he should be allowed to seek medical care outside of the BOP. Since Mr. Lipscomb has been detained, his health has declined dramatically. He did not have prediabetes when he was arrested.

Furthermore, Mr. Lipscomb's family circumstances have changed since his sentencing. As mentioned, Mr. Lipscomb's primary father figure, his step-father Dusty Lewis, died last year from COVID-19. Again, Mr. Lewis and Lipscomb's mother had been married for 54 years. As Mr. Lipscomb's sister-in-law explains it, Mr. Lipscomb's presence is sorely needed following the loss of such a longstanding member of the family: "Mr. Lewis was the patriarch of our family. He ensured that his wife, mom, sister, mother-in-law, and the rest of the family was taken care of… We have all stepped up to try and fill the void but at this time, we need all hands-on deck." Given that Mr. Lipscomb plans to live with his mother upon release, and has

a job lined up to help contribute financially, he should quickly be able to help his family regain some sense of equilibrium during these stressful times. This provides Mr. Lipscomb with a deep-rooted sense of purpose that he is excited to successfully undertake.

Additionally, Mr. Lipscomb likely does not have much time left to spend with some of his closest blood relatives. Firstly, his biological father, Leroy Kersey, was diagnosed with lung cancer in December and given roughly six months to live. ***See Exhibit F: Leroy (T) Kersey Medical Record***; *see also letter to Judge Boyle*. Secondly, Mr. Lipscomb's grandparents are 94 years old. For these family members in particular, releasing Mr. Lipscomb early would give him the opportunity to, as he put it, "prove to them… that I am a changed man."

A reduction or modification of Mr. Lipscomb' sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Lipscomb, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief. Mr. Lipscomb' period of supervised release awaiting him will further ensure that he complies with the release plan discussed with his family. *See United States v. Early*, 2020 WL 2112371, at *5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and []the Court will not hesitate to

17

recommit him to prison should he again go astray.") The Court may also impose home confinement for a term equivalent to the remainder of his custodial sentence as well. 18 U.S.C § 3582(C)(1)(A). *See also United States v. Raia*, No. 2:18-CR-657, Dkt. No. 91 (D.N.J., May 7, 2020). Considering all of these emergency circumstances, this Court could find a combination of supervised release and/or home confinement which would be sufficient to ensure deterrence, protection of the public, and which would allow Mr. Lipscomb to seek alternative medical care in a place that is sanitary and conducive to the recovery of his health.

## CONCLUSION

It is respectfully submitted that Mr. Lipscomb has demonstrated extraordinary and compelling reasons for compassionate release and thus, respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 12th day of March 2021.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served upon the Assistant

Attorney for the United States electronically at the following address:

      Joshua B. Royster
      Assistant Attorney for the United States
      United States Attorney's Office
      Civil Division
      150 Fayetteville St.
      Suite 2100
      Raleigh, NC 27601
      Joshua.royster@usdoj.gov

This 12th day of March 2021.

      GUIRGUIS LAW, PA

      <u>/s/ Nardine Mary Guirguis</u>
      Nardine Mary Guirguis
      PANEL Attorney